J-S25014-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRIAN K. ANDERSON | : | |
| | : | |
| Appellant | : | No. 1866 EDA 2024 |

Appeal from the PCRA Order Entered June 18, 2024
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0005632-2011

BEFORE: PANELLA, P.J.E., DUBOW, J., and BENDER, P.J.E.

MEMORANDUM BY PANELLA, P.J.E.: **FILED SEPTEMBER 4, 2025**

Brian K. Anderson appeals from the order dismissing his petition filed pursuant to the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. Anderson asserts the PCRA court erred in finding prior counsel was not ineffective. After careful review, we affirm on the basis of the well-reasoned opinion of the PCRA court.

In its opinion, the PCRA court fully and correctly sets forth the relevant factual and procedural history. We, therefore, have no reason to restate them at length here. Briefly, on April 19, 2011, Anderson hit the victim, Toby Gale, Jr., twice in the head with a hammer. Anderson later told police he hit Gale once in the head with the hammer because he believed Gale was reaching for a firearm and was about to rob him. Anderson, with the assistance of co-defendant Donier White, then wrapped Gale in trash bags, sealed them with

duct tape and dumped Gale's body. The Commonwealth's medical expert testified at trial that Gale was still alive when Anderson and White wrapped him in trash bags and duct tape. Anderson was charged, inter alia, with murder of the first degree, murder of the third degree, possessing instruments of crime, abuse of corpse, and tampering with or fabricating physical evidence.[1]

Anderson proceeded to trial, held jointly with co-defendant White. Anderson argued to the jury that he was not guilty of first-degree murder because he acted in self-defense. Anderson did not testify, and counsel relied on Anderson's statement to police that he believed Gale was reaching for a firearm and about to rob him. The Commonwealth sought to discredit Anderson's statement through multiple means.

The jury convicted Anderson of murder of the first degree, possessing instruments of crime, abuse of corpse, and tampering with or fabricating physical evidence.[2] The trial court sentenced Anderson to an aggregate life imprisonment without parole and an additional 1-2 years' incarceration. Anderson appealed and this Court affirmed his judgment of sentence on November 26, 2013. Anderson did not file a petition for allowance of appeal with our Supreme Court. However, Anderson did file a timely PCRA petition

---

[1] 18 Pa.C.S.A. §§ 2502(a), 2502(c), 907(a), 5510, 4910, respectively.

[2] 18 Pa.C.S.A. §§ 2502(a), 907(a), 5510, 4910, respectively.

on January 22, 2014, alleging, inter alia, appellate counsel was ineffective for failing to file a petition for allowance of appeal. On May 22, 2015, the PCRA court granted the petition and reinstated Anderson's right to file a petition with our Supreme Court nunc pro tunc.

Anderson filed his petition for allowance of appeal, and our Supreme Court denied that petition on December 8, 2015. Anderson filed the instant PCRA petition on March 6, 2016.[3] Counsel was appointed and numerous requests for additional time to review Anderson's case file were granted. Ultimately, a counseled amended PCRA petition was filed on August 31, 2022. A hearing was held on November 8, 2023, where trial and appellate counsel testified to their respective stewardship of the case. On June 18, 2024, the PCRA court dismissed Anderson's PCRA petition. Anderson timely appealed and complied with the PCRA court's order to file a Rule 1925(b) statement. *See* Pa.R.A.P. 1925(b).

Anderson raises four issues for our review:

1. Whether the PCRA court erred in finding [Anderson's] trial counsel was not ineffective under the Sixth Amendment to the United States Constitution and parallel provisions of the Pennsylvania Constitution, in allowing Juror #4 to be seated, as the juror was openly biased against [Anderson] based on the

---

[3] We note the instant PCRA petition is a timely, first PCRA petition filed after Anderson's appeal nunc pro tunc rendered his judgment of sentence final. ***See Commonwealth v. O'Bidos***, 849 A.2d 243, 252 n.3 (Pa. Super. 2004) (noting "the one-year [PCRA] time clock will not begin to run until [an] appeal nunc pro tunc renders [a] judgment of sentence final.") (italics and citation omitted).

nature of the case, and in ruling that trial counsel's error was not prejudicial?

2. Whether the PCRA [c]ourt erred in finding that [Anderson's] trial counsel was not ineffective under the Sixth Amendment to the United States Constitution and parallel provisions of the Pennsylvania Constitution, in failing to object to the closing argument of the prosecutor, during which the prosecutor argued that the statement of co-defendant Donier White, redacted to replace any reference to [] Anderson by name, proved [] Anderson's guilt of [f]irst [d]egree [m]urder?

3. Whether the PCRA [c]ourt erred in finding that [Anderson's] trial counsel was not ineffective under the Sixth Amendment to the United States Constitution and parallel provisions of the Pennsylvania Constitution, in failing to object to prejudicial and inflammatory remarks made by the prosecutor during closing argument, in which the prosecutor referred to [Anderson's] statement to police as lies, purported to cross examine [Anderson's] statement as if [Anderson] had actually testified and offered that [Anderson's] statement should be used to "line the cat box[,"] where counsel had no reasonable basis to forego an objection to the remarks, and [Anderson] was prejudiced in that the remarks of the prosecutor were of such a nature as to form in the minds of the jurors a fixed bias against [Anderson]?

4. Whether the PCRA [c]ourt erred in finding [Anderson's] direct appeal counsel was not ineffective under the Sixth Amendment to the United States Constitution and parallel provisions of the Pennsylvania Constitution, in failing to raise on direct appeal trial court error in admitting the testimony of Ratika Cruz that, prior to the homicide, [Anderson] uttered a threat of violence directed at no specific person, where Cruz'[s] testimony was inadmissible because it did not connect to the homicide, and, as evidence of a prior bad act was highly prejudicial and its admission not harmless as the Pennsylvania Superior Court cited the testimony as tending to prove malice required for [f]irst [d]egree [m]urder?

Appellant's Brief, at 4-5.

All four of Anderson's claims challenge the dismissal of his PCRA petition.

Our Supreme Court has instructed:

When reviewing the denial of PCRA relief, we must determine whether the PCRA court's factual findings are supported by the record, and whether its conclusions of law are free from legal error. Our scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party. Although we are bound by credibility determinations, we apply a de novo standard of review to legal conclusions.

*Commonwealth v. Clancy*, 192 A.3d 44, 63 (Pa. 2018) (italics and citations omitted).

The PCRA court's opinion methodically details the law and facts surrounding ineffective assistance of counsel and each individual claim Anderson raised. We therefore see no reason to restate them here.

After a thorough review of the record, briefs of the parties, applicable law, and comprehensive opinion of the Honorable Kevin F. Kelly dated December 23, 2024, we conclude there is no merit to Anderson's claims. *See* PCRA Court Opinion, 12/23/24, at 17-45 (finding (1) Anderson failed to prove he was prejudiced by the seating of juror number 4, juror number 4 presumably followed the court's legal instructions, and Anderson presented no evidence to the contrary; (2) the prosecutor did not commit a *Bruton*[4] violation in his closing as he only referred to the co-defendant's statement and the physical/forensic evidence and did not identify Anderson as the other guy named in co-defendant's statement, therefore trial counsel was not ineffective because there was no basis for him to object to the prosecutor's closing

_____

[4] *Bruton v. U.S.*, 391 U.S. 123 (1968).

statement; (3) trial counsel had a reasonable basis not to object to the prosecution's closing where he argued Anderson's statement was all lies because trial counsel did not want to draw attention to it, further, this claim does not have arguable merit as the prosecutor was simply arguing in response to Anderson's closing argument where he told the jury to believe his statement to police; and (4) appellate counsel was not ineffective for failing to appeal the admission of Cruz's testimony because, even if in error, it was harmless due to the significant amount of medical and forensic evidence establishing Anderson's guilt).

For the convenience of the parties, we have attached the cogent and thorough 47-page opinion of the Honorable Kevin F. Kelly dated December 23, 2024.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/4/2025

# THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA
## CRIMINAL

COMMONWEALTH OF PENNSYLVANIA     :     NO. 5632-11

                v.                  :

BRIAN KEITH ANDERSON            :     Superior Court No. 1866 EDA 2024

Michael J. Flowers, Esquire – Assistant District Attorney for the Commonwealth
William P. Wismer, Esquire – Attorney for Brian Anderson

## OPINION

**Kelly, J.**                                        **Date: December 23, 2024**

## I. Introduction

Brian Keith Anderson, (hereinafter referred to as "the Defendant" or "Defendant Anderson") has filed a timely, counseled notice of appeal from this court's June 18, 2024, Order Dismissing PCRA Petition After Evidentiary Hearing Pursuant to Pa.R.Crim.P. 908. *See* Amended Petition for Relief Under the Pennsylvania Post-Conviction Collateral Relief Act[1] (hereafter "PCRA") docketed on August 31, 2022; PCRA evidentiary hearing on November 8, 2023, N.T. 11/8/23, pp. 1-67; PCRA Dismissal Order dated June 18, 2024; Notice of Appeal filed July 12, 2024; and Superior Court No. 1866 EDA 2024; and related responsive filings.

For the reasons detailed *infra,* the PCRA claims for relief advanced by Defendant Anderson's counseled, Amended PCRA Petition, upon a review of the relevant record does not support a grant of PCRA relief.

## II. Case History

This case commenced on April 23, 2011, with the filing of a criminal complaint by Detectives James E. Nolan, IV, Chester City Police Department, and Michael Jay, Delaware County Criminal Investigation Division, *inter alia,* charging Defendant Anderson with murder of the first degree;[2] murder of the third degree;[3] possessing instruments of crime;[4] abuse of corpse;[5] and tampering with or fabricating physical evidence.[6]

On September 28, 2011, a preliminary hearing was held before the magisterial district court. At the conclusion of the preliminary hearing's presentation of evidence, the presiding magisterial district judge found the prosecution had established *prima facia* all prosecuted offenses. N.T. 9/28/11, pp. 5-6, 75-77. *See also* listed offenses *supra.*

Before the trial court on October 27, 2011, the Defendant was formally arraigned at which time the Office of the District Attorney of Delaware County lodged against him a criminal information averring, *inter alia,* the above-referenced crimes. (Count 1 – Murder of the First Degree; Count 2 – Murder of the Third Degree; Count 4 – Possessing Instruments of Crime; Count 6 – Abuse of Corpse; and Count 7 – Tampering with or Fabricating Physical Evidence.) The Commonwealth as well filed a Notice of Proposed Joinder Under Pennsylvania Rule of Criminal Procedure 582 of its intent to collectively try the Defendant, along with his Co-Defendant, Donier White (No. 5625-11). *See* Pa.R.Crim.P. 582. *See also Commonwealth v. White,* No. 5625-11. The Office of the Public Defender of Delaware County having determined that the Defendant qualified for its professional services, and the court having concluded that a conflict of interest existed in that

2

office's representation of Defendant Anderson, by order of December 1, 2011, Scott D. Galloway, Esquire was appointed his counsel. *See* Order dated December 1, 2011.

At trial, the prosecution proceeded only on the following charges: Count 1 – Murder of the First Degree;[7] Count 2 – Murder of the Third Degree;[8] Count 4 – Possessing Instruments of Crime;[9] Count 6 – Abuse of Corpse;[10] and Count 7 – Tampering with or Fabricating Physical Evidence,[11] withdrawing, of-record, the balance of past filed criminal information's counts the day prior to jury selection. N.T. 5/10/12 (Robing Room Conference), pp. 3-4.

After jury selection on May 11, 2012, the Defendant's jury trial commenced before this court on May 14, 2012, continued over the next two (2) days (May 15, 2012, and May 16, 2012), and concluded the following day, May 17, 2012. As to all prosecuted charges, count 1 – murder of the first degree;[12] count 4 – possessing instruments of crime;[13] count 6 – abuse of corpse,[14] and count 7 – tampering with or fabricating physical evidence,[15] the jury found Defendant Anderson guilty. N.T. 5/17/12, pp. 113-27. *See* Jury Verdict.

By virtue of the jury having found Defendant Anderson guilty of count 1 – murder of the first degree, per the court's final instructions, it did not render a verdict otherwise on the lesser degrees of homicide, murder of the third degree,[16] and voluntary manslaughter.[17] *See* Pa.SSJI (Crim) 15.2501B. Although not a charge levied by the Commonwealth, the crime of voluntary manslaughter was at trial counsel's request submitted for decision to the jury, absent Commonwealth objection. N.T. 5/16/12, pp. 192-93, 203-05, 207-08, 216-17; and N.T. 5/17/12, pp. 67-69, 73-74, 76-82. *See also* Jury Verdict.

3

A sentencing hearing was held on July 26, 2012. Defendant Anderson was sentenced by this court pursuant to the applicable statute to a term of incarceration at a state correctional institution of life without parole on count 1 – first degree murder;[18] three (3) to sixty (60) months under count 4 – possessing instruments of crime;[19] one (1) to twenty-four (24) months per count 7 – tampering with or fabricating physical evidence;[20] and one (1) to two (2) years on count 6 – abuse of corpse.[21] See 18 Pa.C.S. §1102(a). The sentences of count 4 – possessing instruments of crime[22] and count 7 – tampering with or fabricating physical evidence[23] were directed to be served concurrent to each other, as well as concurrent with the sentence imposed under count 1 – first degree murder,[24] while the sentence of count 6 – abuse of corpse[25] was imposed consecutive to count 1 – first degree murder.[26] Thus, the aggregate sentence was life imprisonment without parole followed by one (1) through two (2) years additional incarceration. N.T. 7/26/12, pp. 32-40. See also Certificate of Imposition of Judgment of Sentence.

Following sentencing, Jordan Kelleher Reilly, Esquire assumed stewardship of the Defendant's interests. Through Ms. Reilly, Defendant Anderson timely lodged on August 3, 2012, post-sentence motions challenging each of his convictions and seeking an arrest of judgment, judgment of acquittal, and/or the granting of a new trial. See Defendant's Post-Sentence Motions, Paragraphs I and II. See generally Pa.R.Crim.P. 720.

At the resulting hearing on November 16, 2012, defense counsel, with the Defendant's agreement, advanced of-record, in open court, an oral application to discontinue these post-sentence motions. Upon the court's conducting a colloquy of-record regarding the withdrawal of the post-sentence motions, inter alia, Defendant Anderson acknowledged that he was completely aware and appreciated the consequences of such actions and knowingly, intelligently as well as voluntarily was

4

in agreement with the discontinuation of these post-sentence motions. The court relatedly directed that the post-sentence motions were to be noted of-record as withdrawn per an order dated November 16, 2012. *See* Order dated November 16, 2012.

The Defendant forwarded a letter to chambers on December 10, 2012, *inter alia*, requesting that the court appoint an attorney to assist him pursue a direct appeal. *See* Defendant's Letter. A resulting hearing was held on December 13, 2012, and with Defendant Anderson's agreement, the court appointed Ms. Reilly as appellate counsel recognizing her past involvement at bar afforded her an understanding of the case not enjoyed by other lawyers.

The Defendant on December 14, 2012, timely filed a counseled notice of appeal to the Superior Court of Pennsylvania from this court's sentencing judgment made final via its order of November 16, 2012, memorializing of-record, as withdrawn, the Defendant's post-sentence motions. *See* Notice of Appeal dated December 14, 2012. *See also* Superior Court No. 3459 EDA 2012.

By order dated January 3, 2013, the court directed Defendant Attorney's attorney file of-record a Concise Statement of Matters Complained of on Appeal. *See* Pa.R.A.P. 1925(b). *See also* Order dated January 3, 2013.

On or about January 9, 2013, Ms. Reilly filed of-record a Petition for Leave to Withdraw. *See* Petition dated January 9, 2013. A hearing regarding this withdrawal petition was held on January 22, 2013, before this court. Absent opposition, the court permitted Ms. Reilly to step aside and appointed Andrew Goldberg, Esquire to assume stewardship of the Defendant's interests at bar by order of that same date (January 22, 2013). *See* Petition and Order dated January 22, 2013.

Mr. Goldberg given his most recent appointment understandably sought additional time to identify and raise the Defendant's appellate challenges through his lodging of a Petition for Extension of Time to File 1925(b) Statement of Matters. *See* Extension Petition dated January 30, 2013. Per order of January 30, 2013, without Commonwealth objection, the court granted the Defendant's extension application and directed defense counsel to file of-record and serve on this court a statement of errors for appellate review no later than sixty (60) days subsequent. *See* Order dated January 30, 2013. *See generally* Pa.R.A.P. 1925(b).

Defense counsel timely lodged on March 12, 2013, a statement of matters complained of on appeal. *See* Statement of Matters Complained dated March 12, 2013. *See generally* Pa.R.A.P. 1925(b). This error assignment statement raised the sole error assignment that the trial evidence while sufficient to prove voluntary manslaughter,[27] was as a matter of law insufficient to sustain the Defendant's first degree murder,[28] conviction. *See* Statement of Matters Complained dated March 12, 2013.

This court lodged of-record on or about June 26, 2013, its required opinion. *See* Pa.R.A.P. 1925(a). *See also* Trial Court Opinion dated June 26, 2013. For a comprehensive recitation of the evidence presented at trial, this court references and incorporates its 1925(a) direct appeal opinion. *See Id.,* pp. 11-56.

The Superior Court by its opinion dated November 26, 2013, found the totality of the trial record was legally sufficient to sustain the Defendant's first degree murder[29] conviction and affirmed his sentencing judgment. *See* Superior Court No. 3459 EDA 2012 – Opinion, p. 6, 104 A.3d 67 (Pa.Super. 2013)(Table), 2013 WL 11250364 (text)

6

From the Superior Court's affirming the Defendant's judgment of sentence, defense counsel did not lodge with the Pennsylvania Supreme Court a Petition for Allowance of Appeal.

The Defendant on or about January 22, 2014, lodged *pro se* a Motion for Post Conviction Collateral Relief. *See* Defendant's Motion dated January 22, 2014. By this collateral filing, Defendant Anderson averred the ineffective assistance of counsel in that his appellate attorney failed to file an allowance of appeal petition with the Pennsylvania Supreme Court, despite the Defendant's repeated direction that such on his behalf be done. *See* Defendant's Motion dated January 22, 2014.

Consistent with his request for an attorney's assistance, Stephen D. Molineux, Esquire via court order dated January 24, 2014, was appointed stewardship of Defendant Anderson's interests. *See generally Commonwealth v. Luckett*, 700 A.2d 1014, 1016 (Pa.Super. 1997). *See also Commonwealth v. Perez*, 799 A.2d 848, 851-52 (Pa.Super. 2002) *citing Commonwealth v. Guthrie*, 749 A.2d 502, 504 (Pa.Super. 2000); *Commonwealth v. Ferguson*, 722 A.2d 177, 179 (Pa.Super. 1998); *Commonwealth v. Hampton*, 718 A.2d 1250, 1252-53 (Pa.Super. 1998); and *Commonwealth v. Romas*, 14 A.3d 894, 895-96 (Pa.Super. 2011). *See also* Motion dated January 22, 2014, p. 7.

After requesting and being granted several such extension applications, collateral counsel filed on or about April 17, 2015, an amended PCRA petition. *See* Amended Petition dated April 17, 2015. *See also* Orders dated October 15, 2014; February 6, 2015; and March 24, 2015. Through this amended collateral pleading, the Defendant's lawyer similar to the original *pro se* PCRA motion asserted the ineffectiveness of direct appeal counsel in that an allowance of appeal petition was not lodged with the Supreme Court of Pennsylvania contrary to that which the Defendant timely directed. *See* Amended Petition dated April 17, 2015 – Paragraph Nos. 10-17. Per the amended

7

petition, the defense attorney sought reinstatement of the Defendant's right to pursue a direct appeal through this court permitting the lodging with the Pennsylvania Supreme Court of a *nunc pro tunc* petition for allowance of appeal. *See* Amended Petition dated April 17, 2015.

A hearing regarding the Defendant's PCRA pleadings was held on May 21, 2015, before this court. The Defendant having been made aware of his right to be physically present knowingly, intelligently, and voluntarily waived the same and on the advice and consent of his lawyer agreed to appear and participate for purposes of this proceeding via video conferencing from SCI Huntingdon. *See generally* Pa.R.Crim.P. 119(A)(7).

The Office of the Delaware County District Attorney acknowledged of-record at the hearing regarding the PCRA pleadings that it had confirmed with his direct appellate attorney Defendant Anderson did in fact make timely known to him that in the event the Superior Court affirmed the sentencing judgment at bar an allowance of appeal petition was to be lodged with the Pennsylvania Supreme Court.

The court on May 22, 2015, entered an order granting the Defendant's amended petition and reinstated *nunc pro tunc* the Defendant's right to seek with the Supreme Court of Pennsylvania an allowance of appeal. *See* Order dated May 22, 2015.

Contemporaneous with his filing of the amended collateral petition then pending, Mr. Molineux as well lodged an Application for Appointment of Direct Appeal Counsel and Withdrawal of Appearance of PCRA Counsel. *See* Withdrawal Application. *See* Application dated April 17, 2015.

8

By separate order also of May 22, 2015, the court, absent opposition, granted PCRA counsel's application to withdraw and for purposes of the Defendant pursuing before the Pennsylvania Supreme Court an allowance of appeal petition appointed Nusrat J. Rashid, Esquire. *See* Order dated May 22, 2015.

On July 2, 2015, Attorney Rashid lodged a Petition for Allowance of Appeal with the Pennsylvania Supreme Court. *See* Supreme Court No. 509 MAL 2015 – Petition for Allowance of Appeal.

The Pennsylvania Supreme Court on December 8, 2015, entered an order denying the Defendant's allowance of appeal petition. *See* Supreme Court No. 509 MAL 2015 – Order dated December 8, 2015; 634 Pa. 740, 130 A.3d 1285 (2015)(Table). The Defendant's counsel then filed on December 18, 2015, an Application for Reconsideration of Denial of Petition for Allowance of Appeal. *See* Supreme Court No. 509 MAL 2015 – Application for Reconsideration of Denial of Petition for Allowance of Appeal. The Supreme Court of Pennsylvania by order dated January 21, 2016, denied this application for reconsideration. *See* Supreme Court No. 509 MAL 2015 – Order dated January 21, 2016.

Attorney Rashid on February 9, 2016, filed a Petition to Withdraw Appearance in the above-captioned matter. By an order dated February 10, 2016, this court granted this petition to withdraw. *See* Order dated February 10, 2016.

On March 16, 2016, the Defendant lodged his most recent Motion for Post Conviction Collateral Relief. *See* Motion filed on March 16, 2016, and postmarked March 14, 2016.

Via an order dated March 23, 2016, Henry DiBenedetto Forrest, Esquire was for purposes of this collateral action appointed to represent Defendant Anderson. *See* Order dated March 23, 2016. After a number of extension requests and hybrid filings by the Defendant, which were not adopted by his appointed PCRA counsel, said counsel made application to withdraw from this matter because of an irretrievable breakdown in necessary attorney – client relations. *See* Application to Withdraw filed February 10, 2022. This court granted the withdrawal request and appointed present PCRA counsel, William P. Wismer, Esquire by order dated March 14, 2022. *See* Order entered March 14, 2022 and AOPC Docket.

The Defendant, through his counseled, amended PCRA petition, sought relief in the form of vacating his convictions for murder and related offenses and ordering a new trial. *See* Defendant's counseled, Amended PCRA Petition docketed August 31, 2022. This court ordered, and the Commonwealth responded to the Defendant's Amended PCRA Petition. *See* Commonwealth's Motion to Dismiss and Memorandum of Law, filed February 20, 2023.

On November 8, 2023, pursuant to Pa.R.Crim.P. 908, the court held a PCRA evidentiary hearing. *See* N.T. 11/8/23, pp. 1-67. By agreement and at the direction of the court, both parties submitted post-hearing memoranda following receipt of the PCRA hearing transcript. *See* N.T. 11/8/23, pp. 66-67; Petitioner's Memorandum of Law dated January 2, 2024; and Commonwealth's Supplemental Post-Hearing Memorandum in Support of Dismissal filed February 1, 2024.

Upon review and consideration of the entire PCRA hearing record, which included Defendant's Amended PCRA Petition docketed August 31, 2022; the Commonwealth's Motion to Dismiss and Memorandum of Law dated February 20, 2023; the PCRA evidentiary hearing

transcript dated November 8, 2023; the Petitioner's counseled post-hearing Memorandum in Support of Post Conviction Relief dated January 2, 2024; and the Commonwealth's Supplemental Response docketed February 1, 2024, as well as having conducted an independent and thorough review of the record at trial, the court on June 18, 2024, dismissed Defendant Anderson's amended PCRA petition and denied his related post-conviction collateral request for relief. *See* Order Dismissing PCRA Petition after Evidentiary Hearing dated June 18, 2024; and AOPC Docket. *See also* Defendant's counseled, Amended PCRA Petition docketed August 31, 2022.

The relevant underlying factual background as elicited at Defendant Anderson's trial is set forth *infra* from the Superior Court's Memorandum Opinion affirming the Defendant's sentencing judgement.

> Appellant, Brian K. Anderson, appeals from the judgment of sentence, pursuant to a conviction for first degree murder, entered on July 26, 2012, by the Honorable Kevin F. Kelly, Court of Common Pleas of Delaware County. After careful review, we affirm.
>
> In a recorded statement to police investigators on April 22, 2011, Anderson admitted that in the evening of April 19, 2011, he had hit the victim, Toby Gale, Jr., in the head with a hammer. Anderson stated that he delivered the blow because he believed that Gale was trying to rob him and was reaching for a firearm. It is undisputed that Gale did not have a firearm at the time.
>
> Anderson then wrapped Gale, who may have still been alive at the time, in trash bags sealed with duct tape. Anderson placed Gale in the trunk of his vehicle and dumped him in a vacant lot in the City of Chester. Anderson then disposed of the hammer in a dumpster behind a market in Chester. He was subsequently arrested by Chester police officers and charged with murder.    *    *    *    *    *
>
> On appeal, Anderson challenges the sufficiency of the evidence supporting his conviction for first-degree murder. In particular, Anderson contends that the evidence cannot, as a matter of law, be

11

sufficient to overcome his claimed excuse of imperfect self-defense: "As [Anderson] actually but unreasonably believed that deadly force was necessary to defend himself, the evidence was sufficient to prove Voluntary Manslaughter (i.e., "imperfect self-defense") but not Murder of the First Degree." Appellant's Brief, at 6.

However, our review of the record reveals a plethora of evidence to support a finding that Anderson killed Gale with malice, and not out of an actual fear for his life.

\*        \*        \*        \*        \*

First, the Commonwealth presented evidence of animus between Anderson and Gale. At the time of Gale's death, Anderson was living with his grandmother, Teresa Bishop. Ratika Lashandra Cruz was a care-taker for Bishop, and was at Bishop's home to arrange for services for Bishop on the afternoon of April 19, 2011. She testified that she observed Anderson texting on his cell phone and state "if this nigger come over here I'm going to fuck him up." N.T., Trial, 5/14/2012, at 204. While Cruz testified that she was not explicitly aware of who Anderson was referring to, it was permissible for the jury to infer that Gale was the object of Anderson's ire, given that Anderson admits that he killed Gale that evening.

In addition, the Commonwealth presented expert testimony that Gale was struck twice in the head with a hammer, not just once, as claimed by Anderson. Bennett Preston, M.D., testified that Gale had been "struck twice in the head, once to the upper forehead to the right side and once to the right side of the head." N.T., Trial, 5/16/2012, at 37. The injury to the forehead was caused by "the rounded, flat end" of the head of the hammer. *Id.*, at 40. The injury to the right side of the head was caused by the claw of the hammer head. *Id.* Either injury would have been enough to immediately incapacitate Gale. *See id.,* at 46. This testimony certainly undercut the credibility of Anderson's claim that he struck Gale only once with the hammer. Evidence of a second blow from the hammer, after Gale was already incapacitated, is also sufficient, by itself, to support a finding that Anderson acted with malice and not in self-defense.

Furthermore, Dr. Preston opined that Gale was still alive when Anderson placed a garbage bag over his head. *See id.,* at 45–46. Gale had a 50/50 chance of surviving the injuries to his head if he had been provided immediate medical treatment. *See id.,* at 48. Dr. Preston believed that Gale's death was caused by "[b]lunt-force injury to the head contributed to by asphyxiation." *Id.,* at 50. Based

12

upon this evidence, even if the jury had believed that Anderson acted pursuant to an actual belief that Gale was threatening him, the jury was entitled to conclude that Anderson's failure to seek immediate medical attention for Gale established that Anderson acted with malice.

Finally, the Commonwealth presented evidence that Anderson went to great lengths to clean up and hide the crime scene. *See, e.g.,* N.T., Trial, 5/15/12, at 45–54; 201–204. Evidence that the defendant cleaned the site of the murder in an attempt to hide evidence of the crime permits an inference of the defendant's consciousness of his own guilt. *See Truong,* 36 A.3d 592, 600 (Pa.Super.2012)(*en banc*).

Viewing the record as a whole, there was sufficient evidence to support the jury's verdict that Anderson acted with malice when he killed Gale. We therefore conclude that Anderson's challenge to the sufficiency of the evidence supporting his conviction merits no relief.

*See* Superior Court Memorandum Opinion dated November 26, 2013, *supra* at *1 and *3. *See also* Pa.R.A.P. 1925(a) Trial Court Opinion on direct appeal dated June 26, 2013, pp. 11-56, referenced *supra.*

### *III. Timeliness*

Before reaching the merits of Defendant's claims, the timeliness of Defendant's petition had to be addressed. *See Commonwealth v. Miller,* 102 A.3d 988, 992 (Pa.Super. 2014). A defendant must file a PCRA petition within one (1) year from the date the judgment of sentence becomes final. 42 Pa.C.S. §9545(b)(1). "The timeliness of a PCRA petition is jurisdictional. If a PCRA petition is untimely, a court lacks jurisdiction." *Commonwealth v. Reeves,* 296 A.3d 1228, 1230-31 (Pa.Super. 2023). *See also Commonwealth v. Pew,* 189 A.3d 486, 488(Pa.Super. 2018) ("All PCRA petitions must be filed within one year of the date upon which the judgment of sentence

13

became final, unless one of the statutory exceptions set forth in 42 Pa.C.S. §9545(b)(1)(i)-(iii) applies."); *Commonwealth v. Kretchmar*, 189 A.3d 459, 462 (Pa.Super. 2018) *quoting* 42 Pa.C.S. §9545(b)(1)(i)-(iii); *Commonwealth v. Staton*, 184 A.3d 949, 954 (Pa.Super. 2018) *quoting* *Commonwealth v. Cox*, 636 Pa. 603, 613, 146 A.3d 221, 227 (2016); *Commonwealth v. Johnson*, 945 A.2d 185, 188 (Pa.Super. 2008); *Commonwealth v. Davis*, 916 A.2d 1206, 1208-09 (Pa.Super. 2007); and *Commonwealth v. Jackson*, 30 A.3d 516, 518-19 (Pa.Super. 2011) *quoting* 42 Pa.C.S. §9545(b). A sentencing judgment becomes final for purposes of the Post Conviction Relief Act " ... at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S. §9545(b)(3).

The Defendant's initial, uncounseled, *pro se* PCRA Petition requesting restoration of his right to pursue a *nunc pro tunc* petition for allowance of appeal docketed on January 22, 2014, was clearly timely. *See* Defendant's *pro se* PCRA Petition filed January 22, 2014, ("Prisoner Mailbox Rule" where an incarcerated *pro se* defendant's filing date is deemed when it is placed in the hands of prison authorities for mailing.). *See also Commonwealth v. Crawford*, 17 A.3d 1277, 1281 (2011); and *Commonwealth v. Wojtaszek*, 951 A.2d 1169, 1170, Fn. 3 (Pa. Super. 2008). The Prisoner Mailbox Rule was not applied here due to lack of necessity. *See also* Counsel's Amended PCRA Petition dated April 17, 2015; and 42 Pa.C.S. §9545(b)(1)(3).

When a PCRA petitioner's direct appeal rights are reinstated, a subsequent PCRA pleading is considered a first PCRA filing for timeliness purposes. *Commonwealth v. Karanicolas*, 836 A.2d 940, 944 (Pa.Super. 2003) *citing generally Commonwealth v. Lewis*, 718 A.2d 1262 (Pa.Super. 1998); *Commonwealth v. Turner*, 734 A.3d 1283, 1286, Fn. 3 (Pa.Super. 2013)(The one-year PCRA

14

filing time certain does not begin to run until the appeal *nunc pro tunc* renders the judgment of sentence final.)

The Supreme Court of Pennsylvania on December 8, 2015, denied Defendant Anderson's Petition for Allowance of Appeal salient to his convictions' direct appellate review, and upon application, subsequently refused reconsideration of its order denying *allocatur* on January 21, 2016. *See Commonwealth v. Anderson supra.* Hence, after recognizing the ninety (90) day period for filing a Petition for Writ of *Certiorari* to the United States Supreme Court, the Defendant's sentencing judgment at bar became final on March 8, 2016, and the one year PCRA time clock commenced. *See* 42 Pa.C.S. §9545(b)(3). *See also* U.S.Sup.Ct.R. 13.1. To satisfy the Post Conviction Relief Act's one (1) year filing mandate, Defendant Anderson was thus required to lodge his PCRA pleadings no later than March 8, 2017. *See* 42 Pa.C.S. §9545(b)(1)(3). The Defendant's *pro se* PCRA petition postmarked March 14, 2016, and docketed on March 16, 2016, once again meets the jurisdictional requirements of the PCRA.

### *IV. PCRA Eligibility Requirements and Legal Standards*

Section 9543 of the PCRA, *inter alia*, provides to be eligible for relief a defendant must establish by a preponderance of the evidence that the conviction(s) resulted from one (1) or more of the Act's specifically enumerated errors and/or defects and that such have not been waived. *See* 42 Pa.C.S. §9543(a)(1)(2)(3). *See also Commonwealth v. Banks*, 540 Pa. 143, 148-149, 656 A.2d 467, 469 (1995) and *Commonwealth v. Keaton*, 615 Pa. 675, 693, 45 A.3d 1050, 1060 (2012) *quoting* 42 Pa.C.S. §9544(b). A collateral claim is waived for purposes of the Post Conviction

15

Relief Act " ... if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state post conviction proceeding." 42 Pa.C.S. §9544(b).

To prevail on a petition for PCRA relief, based on the issues raised and grounds relied on by Defendant Anderson, he had the burden to plead and burden of proving, by a preponderance of the evidence, that his conviction resulted from ineffectiveness of counsel, which "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. §9543(a)(2)(ii); and *Commonwealth v. Hopkins*, 231 A.3d 855, 871 (Pa.Super. 2020), *appeal denied*, 663 Pa. 418, 242 A.3d 908 (2020).

The law presumes counsel has rendered effective assistance, and " ... the burden of demonstrating ineffectiveness rests on [the defendant]" *Commonwealth v. Rivera*, 10 A.3d 1276, 1279 (Pa.Super. 2010) *citing Commonwealth v. Thomas*, 783 A.3d 328, 332 (Pa.Super. 2001)(citation omitted). To satisfy his or her burden, a defendant must plead and prove by a preponderance of the evidence that: (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's actions or failure to act; and (3) absent counsel's error(s), there is a reasonable probability that the outcome of the challenged proceeding would have been different. *Commonwealth v. Spotz*, 624 Pa. 4, 33-34, 84 A.3d 294, 312 (2014)("[A] reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding."); *Commonwealth v. Busanet*, 54 A.3d 35, 46 (Pa. 2012); and *Commonwealth v. Fulton*, 830 A.2d 567, 572 (Pa. 2003). *See also Commonwealth v. Hopkins supra* 876 A.3d at 876 *quoting Commonwealth v. Chambers*, 570 Pa. 3, 22, 887 A.2d 872, 883 (2002)("[A] criminal defendant alleging prejudice must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."). Failure to satisfy any of the three (3) prongs of the test will result in the

16

denial of a defendant's claim. *Id.; Commonwealth v. Sandusky*, 203 A.3d 1033, 1043 (Pa.Super. 2019), *appeal denied*, 654 Pa. 568, 216 A.3d 1029 (2019).

Of course, " ... counsel cannot be deemed ineffective for failing to raise a meritless claim" or failing to perform a futile act. *Commonwealth v. Fears*, 86 A.3d 795, 804 (Pa. 2014) *citing Commonwealth v. Washington*, 927 A.2d 586, 603 (Pa. 2007)(Citations omitted); *Commonwealth v. Loner*, 836 A.2d 128, 132 (Pa.Super. 2003)(*en banc*).

Finally, as a general rule, "a lawyer should not be held ineffective without first having an opportunity to address the accusation in some fashion." *Commonwealth v. Colavita*, 993 A.2d 874, 895 (Pa. 2010), *overruled on other grounds, Commonwealth v. Bradley*, 261 A.3d 381 (Pa. 2021).

### V. Ineffective Assistance of Counsel Claims

Defendant Anderson posited five (5) ineffective assistance of counsel claims. First, he averred that trial counsel rendered ineffective assistance by failing to further question a juror who affirmatively responded that because the underlying circumstances of the victim's killing were drug related it would be "difficult, if not impossible" for him "to be a fair and impartial juror should [he] be selected." *See* N.T. 5/11/12, pp. 41-42. Other than standing up along with four (4) other members of the jury panel after the question was asked, juror number four (4) was not individually *voir dired*, trial counsel did not move to challenge the juror for cause, nor did he utilize a peremptory strike to eliminate the juror. Panelist number four (4) ended up being seated as juror number two (2) for the

17

Defendant's trial. *See* N.T. 5/11/12 at 263; Amended PCRA Petition docketed August 31, 2022, pp. 3-4.

Second, the Defendant alleged his trial counsel was constitutionally ineffective for failing to file a motion to sever his case for trial from his Co-Defendant, Donier White's matter pursuant to Pa.R.Crim.P. 583. *See* Amended PCRA Petition docketed August 31, 2022, pp. 4-5. *See also* *Commonwealth v. White*, No. 5625-11. This issue; however, has not been preserved for appellate review because it was not in included in the Defendant's Pa.R.A.P. 1925(b) Concise Statement of Matters Complained of on Appeal.[30] *See* Defendant's Statement Pursuant to Pa.R.A.P. 1925(b) docketed August 15, 2024.

Defendant Anderson's third claim related to trial counsel's failure to object during the prosecutor's closing argument when he juxtaposed Defendant Anderson and his co-defendant's statements with the physical evidence and the medical examiner findings. *See* Amended PCRA Petition Docketed August 31, 2022, pp. 5-7 and N.T. 5/17/12, pp. 35-36. The Defendant contends that this was a clear violation of *Bruton v. United States*, 393 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 676 (1968) and the court's instructions to the attorneys prior to their closing arguments.

Next, the Defendant asserted his trial counsel was ineffective for failing to object to another portion of the prosecutor's closing argument where he states that Defendant Anderson's statement to law enforcement was "so incoherent, so inconclusive, so contradictory that it's not worth the paper it's printed on. ... and [y]ou can line the cat box with it. It is nothing but lies. ..." N.T. 5/17/12 at pp. 30-32. PCRA counsel contends such remarks were inflammatory and prejudicial and

18

warranted an objection by trial counsel. *See* Amended PCRA Petition docketed August 31, 2022, pp. 7-9.

Defendant Anderson's final claim alleged ineffective assistance of his appellate counsel for failing to raise the claim on direct appeal that the court abused its discretion in allowing the testimony of witness Ratika Cruz who testified that before the victim was killed, while texting, the Defendant uttered "if this nigger come over here I'm going to fuck him up." N.T. 5/14/12, p. 204 and Amended PCRA Petition docketed August 31, 2022, p. 9. Before Ms. Cruz testified, trial counsel placed his objection to such testimony on the record and asserted that because the Defendant did not identify to whom he was referring, it was speculative and unduly prejudicial rather than probative. *See* N.T. 5/14/12, pp. 153-55. The court overruled the objection and the witness testified as described. Direct appeal counsel did not pursue this issue on appeal.

The court's analysis of the PCRA issues preserved for appellate review follows.

## *VI. Discussion*

### *VI-A. Alleged ineffective assistance of counsel during voir dire for not challenging for cause or exercising a peremptory challenge to eliminate juror number four (4) from the panel.*

In Defendant Anderson's Rule 1925(b) statement, he couches the first issue in the following manner:

> *Whether the PCRA court erred in finding Defendant's trial counsel was not ineffective under the Sixth Amendment to the United States Constitution and parallel provisions of the Pennsylvania Constitution, in allowing Juror #4 to be seated, as the juror was*

19

*openly biased against the Defendant based on the nature of the case,*
*and in ruling that trial counsel's error was not prejudicial?*

Defendant's Statement Pursuant to Pa.R.A.P. 1925(b) docketed August 15, 2024 – No. 1.

The Pennsylvania appellate courts have long recognized as follows relative to the jury selection process:

> The test for determining whether a prospective juror should be disqualified is whether he is willing and able to eliminate the influence of any scruples and render a verdict according to the evidence, and this is to be determined on the basis of answers to questions and demeanor ... . It must be determined whether any biases or prejudices can be put aside on proper instruction of the court ... . A challenge for cause should be granted when the prospective juror has such a close relationship, familial, financial, or situational, with the parties, counsel, victims, or witnesses that the court will presume a likelihood of prejudice or demonstrates a likelihood of prejudice by his or her conduct and answers to questions.... The decision on whether to disqualify is within the discretion of the trial court and will not be reversed in the absence of a palpable abuse of discretion ... .

*Commonwealth v. Lesko*, 609 Pa. 128, 242–43, 15 A.3d 345, 413–14 (2011) *quoting Commonwealth v. Wilson*, 543 Pa. 429, 442, 672 A.2d 293, 299 (1996) *quoting Commonwealth v. Colson*, 507 Pa. 440, 454, 490 A.2d 811, 818 (1985), *abrogated on other grounds, Commonwealth v. Burke*, 566 Pa. 402, 781 A.2d 1136 (2001).

A criminal defendant's right to an impartial jury is explicitly granted by Article I, Section 9 of the Pennsylvania Constitution and the Sixth Amendment of the United States Constitution. *Commonwealth v. Ellison*, 588 Pa. 1, 8, 902 A.2d 419, 423 (2006) *citing Commonwealth v. Ingber*, 516 Pa. 2, 6, 531 A.2d 1101, 1102 (1986). The jury selection process is most certainly crucial to that right's preservation. *Id.* 588 Pa. at 8, 902 A.2d at 423. *Voir dire* provides counsel the obviously requisite opportunity to assess the qualifications of the prospective jurors to serve. It is therefore appropriate to use such an examination to disclose fixed opinions or to expose other reasons for

disqualification. *Commonwealth v. Drew*, 500 Pa. 585, 588, 459 A.2d 318, 320 (1983) *citing* *Commonwealth v. Johnson*, 452 Pa. 130, 134, 305 A.2d 5, 7 (1973).

It is well-settled that the sole purpose of the questioning of prospective jurors under *voir dire* is to secure a competent, fair, impartial and unprejudiced jury. *Commonwealth v. Ellison supra* 588 Pa. at 8, 902 A.2d at 423-24 *citing Commonwealth v. Drew supra* 500 Pa. at 589, 459 A.2d at 320 *citing Commonwealth v. McGrew*, 375 Pa. 518, 525, 100 A.2d 467, 470 (1953). While a lawyer should be permitted considerable latitude on *voir dire*, such inquiries are confined by relevance to disclosing the legal qualifications of a juror and whether the juror has formed a fixed opinion or may be otherwise subject to striking for cause. *Id. See also* 42 Pa.C.S. §§4502 and 4503.

Regarding jury selection in a criminal trial, the Rules of Criminal Procedure direct that trial courts use juror information questionnaires in conjunction with the *voir dire* examination of prospective jurors. *See* Pa.R.Crim.P. 631(E) and Pa.R.Crim.P. 632. The questionnaire serves to facilitate and expedite *voir dire* and is to be used as an aid in the oral questioning of potential jurors. By providing the trial judge and attorneys with basic background information about the possible jurors and eliminating the need for many commonly asked questions, the informational questionnaires of venirepersons enable the jury selection process to proceed more orderly and time efficient. Nothing in these rules detailing the use of potential juror questionnaires is intended to preclude oral questioning during *voir dire*. *See* Pa.R.Crim.P. 631 Comment and 632 Comment. *See also Commonwealth v. Ellison supra* 588 Pa. at 8-9, 902 A.2d at 423-24. Moreover, juror information questionnaires are to be used in conjunction with the verbal examination of the prospective jurors and are not to be used as a substitute for the equally necessary oral inquiries. *See* Pa.R.Crim.P. 631(E) and Pa.R.Crim.P. 632(D).

21

It is well-settled Pennsylvania law that the scope of *voir dire* is within the sound discretion of the trial judge. *Id.* 588 Pa. at 9, 902 A.2d at 424 *citing Commonwealth v. McGrew supra* 375 Pa. at 526, 100 A.2d at 471. "The opportunity to observe the demeanor of the prospective juror and the tenor of the juror's answers is indispensable to the judge in determining whether a fair trial can be had in the community. Claims of impartiality by prospective jurors are subject to scrutiny for credibility and reliability as is any testimony, and the judgment of the trial court is necessarily accorded great weight." *Commonwealth v. Bachert*, 499 Pa. 398, 409, 453 A.2d 931, 937 (1982).

These decisions of the trial judge concerning *voir dire* will therefore not be reversed in the absence of "palpable error." *Commonwealth v. Ellison supra* 588 Pa. at 9, 902 A.2d at 424 *citing Commonwealth v. McGrew supra* 375 Pa. at 526, 100 A.2d at 471.

It must be remembered the purpose of the *voir dire* examination is to provide an opportunity to counsel to assess the qualifications of prospective jurors to serve. *Commonwealth v. Drew supra* 500 Pa. at 588, 459 A.2d at 320. It is thus appropriate to use such an examination to disclose fixed opinions or to expose other reasons for disqualification. *Commonwealth v. Ingber supra* 516 Pa. at 6, 531 A.2d at 1103. Hence, the qualification inquiries must be directed at ascertaining whether the venireperson is legally competent to serve and capable of rendering a fair, impartial and unbiased verdict. *Id. citing Commonwealth v. Johnson supra* 452 Pa. at 130, 305 A.2d at 5. *See also* 42 Pa.C.S. §§4502 and 4503. The question relevant to a determination of qualification generally is whether any biases or prejudices can be put aside upon the proper instruction of the court. *Commonwealth v. Karenbauer*, 552 Pa. 420, 438, 715 A.2d 1086, 1094 (Pa. 1998); *Commonwealth v. England*, 474 Pa. 1, 7, 375 A.2d 1292, 1296 (Pa. 1977).

22

Such a principle of law recognizes that the frailty of human nature which at times nurtures improvident thought can be rehabilitated by the proper intervention of the trial court, as discussed in the appellate courts.

> As we recognized above, the purpose of the voir dire examination is to disclose qualifications or lack of qualifications of a juror and in particular to determine whether a juror has formed a fixed opinion as to the accused's guilt or innocence. The law recognizes that it would be unrealistic to expect jurors to be free from all prejudices, a failing common to all human beings. We can only attempt to have them put aside those prejudices in the performance of their duty, the determination of guilt or innocence. We therefore do not expect a tabula rosa [sic] but merely a mind sufficiently conscious of its sworn responsibility and willing to attempt to reach a decision solely on the facts presented, assiduously avoiding the influences of irrelevant factors.

*Commonwealth v. Drew supra* 500 Pa. at 589, 459 A.2d at 320 *quoting Commonwealth v. Johnson supra* 452 Pa. at 134-35, 305 A.2d at 7.

The purpose of *voir dire* is to facilitate the empaneling of a "competent, fair, impartial, and unprejudiced jury" and a trial court's discretion concerning the scope of *voir dire* must relatedly be considered in light of the factual circumstances of a particular criminal episode." *Commonwealth v. Holt*, 273 A.3d 514, 546 (Pa. 2022) *quoting Commonwealth v. Proctor*, 526 Pa. 246, 257, 585 A.2d 454, 460 (1991) and *Commonwealth v. England supra* 474 Pa. at 6, 375 A.2d at 1295. The breadth of such scope rests in the sound discretion of the trial court, whose decisions will not be reversed on appeal absent palpable error. *Commonwealth v. Holt supra* 273 A.3d at 547 *citing Commonwealth v. Bomar*, 573 Pa. 426, 456, 826 A.2d 831, 849 (2003) *citing Commonwealth v. Bridges*, 563 Pa. 1, 27, 757 A.2d 859, 872 (2000).

During the *voir dire*, the court instructed the jury panel that as it relates to principles of law all juries must follow the judge's instructions. N.T. 5/11/12, p. 21. In such regard, the court asked

23

the jurors to respond to a series of questions and respond affirmatively by standing and identifying themselves by juror number in order to effectuate further individual questioning if deemed necessary by the court and counsel. *See* N.T. 5/11/12, pp. 24-44; and *Id.*, pp. 44-244 (follow-up questioning).

During the preliminary questioning of the panel, juror number four (4) and four (4) other jurors stood up to indicate that because "there may be evidence presented at trial that the killing of Mr. Toby Gale was related either to the use and or the sale of drugs ... that such circumstances would make it difficult, if not impossible ... to be a fair and impartial juror ..." N.T. 5/11/12, pp. 41-42. Juror number four (4) did not stand for any of the court's other questions to the panel. With the subsequent individual *voir dire* of jurors who stood up for any of the court's questions, juror number four (4) apparently and inexplicably was not questioned further.

Without benefit of follow-up questions from either the court or attorneys, juror number four (4) ultimately was placed on the jury as juror number two (2). Neither the prosecutor nor defense counsel challenged the juror at issue for cause nor did they utilize one of their peremptory challenges to remove the juror. *See* N.T. 11/14/12, p. 263. The prosecutor and defense counsel for each defendant accepted the jury as being properly selected and seated. *Id.*, p. 264. Along with the other jurors selected, now designated juror number two (2) was administered the oath and sworn in as a juror, promising to decide the case fairly and impartially. *See* N.T. 5/14/12, p. 17 and Pa.R.Crim.P. 640(B)("You do solemnly swear by Almighty God ... [or] [... do declare and affirm] that you will well and truly try the issue joined between the Commonwealth and the defendant(s), and a true verdict render according to the evidence."). The Defendant's trial counsel, Scott P. Galloway, Esquire, who the court knows to be a capable, experienced criminal defense attorney, and one who is well-versed in the Delaware County jury selection process had no longer retained his case file or

24

notes from jury selection some twelve (12) years earlier. He had no independent recollection of the juror and could not recall anything out of the ordinary with the juror. *See* N.T. 11/8/23, pp. 16-35, 48-53.

"Except as otherwise prescribed by general rule, errors and omissions in the selection of jurors ... shall not constitute grounds to set aside any jury verdict in any civil or criminal matter or to arrest, reverse, open or strike any judgment entered on a jury verdict, and the trial by jury and its rendition of a verdict in any matter shall constitute a waiver of all such errors and omissions." 42 Pa.C.S. §4527. Prospective juror number four (4) may have commenced *voir dire* with a belief that the facts of the case could be difficult for him; however, he ultimately committed without any expressed reservation or equivocation to carrying out his oath as a juror. A prospective juror's personal views are of no moment unless these opinions " ... are so deeply embedded as to render that person incapable of accepting and applying the law as given by the court." *Commonwealth v. Holt supra* 273 A.3d 514, 547 (2022) *quoting Commonwealth v. England supra* 474 Pa. at 375 A.2d at 1296. "So long as the juror is able to, intends to, and eventually does, adhere to the instructions on the law as propounded by the trial court, he or she is capable of performing the juror's function." *Commonwealth v. Holt supra* 273 A.3d at 547 *quoting Commonwealth v. England supra* 375 A.2d at 1296.

Moreover, our law presumes that a juror followed the trial court's legal instructions. *Commonwealth v. Holt supra* 273 A.3d at 547-48 *citing Commonwealth v. Robinson*, 581 Pa. 154, 244, 864 A.2d 460, 513 (2004) and *Commonwealth v. Tedford*, 598 Pa. 639, 700, 960 A.2d 1, 37 (2008). In its final charge to the jury, the court emphasized that the jurors were without fail to accept and follow his rulings and instructions on the law, N.T. 5/17/12, p. 50; to be true to the solemn oath

25

they took to try the case fairly and impartially, N.T. *Id.* at 54; arrive at a proper verdict by fairly, justly, and impartially finding the true facts without being swayed by sympathy or prejudice of any kind or influenced by anything outside of the evidence presented and the law as instructed by the court, N.T. *Id* at 95.; and their deliberations to be free of bias, prejudice, or partiality, in N.T. *Id.* at 103.

There is absolutely no indication that the juror at issue had any difficulty following the instructions of the court. Nor at any time during the Defendant's trial did the juror at issue express any reservations regarding his ability to serve as a fair and impartial juror. Despite PCRA counsel's cogent argument, the prejudice required for the grant of PCRA relief cannot on this record be found.

### VI-B. Ineffective assistance of counsel for failing to object to the prosecutor's purported *Bruton* violation in his closing argument.

Defendant Anderson contends he was denied the effective assistance of counsel when without an objection, the prosecutor allegedly violated the foundational reasoning underpinning the *Bruton* decision by using Co-Defendant White's statement as evidence against him (Anderson). *See* Defendant's Amended PCRA Petition, pp. 5-7; and Defendant's Memorandum of Law, pp. 13-18. *See also Bruton v. United States supra* 391 U.S. at 88 S.Ct. 1620. This court disagrees.

In his 1925(b) statement of errors, Defendant questions

> *[w]hether the PCRA Court erred in finding that Defendant's trial counsel was not ineffective under the Sixth Amendment to the United States Constitution and parallel provisions of the Pennsylvania Constitution, in failing to object to the closing argument of the prosecutor, during which the prosecutor argued that the statement*

26

*of co-defendant Donier White, redacted to replace any reference to Defendant Anderson by name, proved Defendant Anderson's guilt of First Degree Murder?*

Defendant's Statement Pursuant to Pa.R.A.P. 1925(b) docketed August 15, 2024 – No. 2.

Regarding *Bruton supra,* the Superior Court has opined:

> In *Bruton,* the United States Supreme Court held that a non-testifying co-defendant's confession, which implicates another defendant in the charged offense, is inadmissible against the defendant because it violates his Sixth Amendment right to confront and to cross-examine any witnesses testifying against him. However, the Supreme Court subsequently held that the Confrontation Clause is not violated by the admission of a non-testifying co-defendant's confession where the statement is redacted to eliminate any reference to the defendant and is accompanied by a limiting instruction.

*Commonwealth v. Freeman,* 128 A.3d 1231, 1244 (Pa.Super. 2015) *citing Bruton v. United States supra* 391 U.S. at 88 S.Ct. 1620. *See also Richardson v. Marsh,* 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987).

In examining issues surrounding a co-defendant's confession and testimony presented at a joint trial about the same, the Pennsylvania Supreme Court has found:

> 'The Confrontation Clause guarantees a criminal defendant the right to cross-examine witnesses. *Richardson v. Marsh,* 481 U.S. 200, 206 [107 S.Ct. 1702, 95 L.Ed.2d 176] (1987). Ordinarily, a witness whose testimony is introduced at a joint trial is not considered a witness 'against' a defendant if the jury is instructed to consider the testimony only against a co-defendant. This principle is in accord with the well-established presumption that jurors will abide by their instructions. In *Bruton,* however, the United States Supreme Court recognized that 'there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored.' *Bruton [supra]* 391 U.S. at 135 [88 S.Ct. 1620]. Accordingly, '[t]he *Bruton* Court held that, if a non-testifying co-defendant's confession directly and powerfully implicates the defendant in the crime, then an instruction to the jury to consider the evidence only against the co-defendant is insufficient, essentially as a matter of law, to protect the defendant's confrontation rights.' *Commonwealth v. Brown,* [592 Pa. 376[, 390]] 925 A.2d 147,

27

157 (Pa. 2007) (citing *Bruton* [*supra*] 391 U.S. at 135–36 [88 S.Ct. 1620]).

> The United States Supreme Court examined the *per se Bruton* rule in *Richardson*, *supra*, and emphasized its narrow scope. Therein, the Court held that the 'Confrontation Clause is not violated by the admission of a non-testifying co-defendant's confession with a proper limiting instruction when ... the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence.' *Richardson*, 481 U.S. at 211 [107 S.Ct. 1702]. *Consistent with the High Court's pronouncement and our own line of cases, we have held that substituting the neutral phrase 'the guy' or 'the other guy' for the defendant's name is an appropriate redaction. See Commonwealth v. Travers*, [564 Pa. 362, 372-73], 768 A.2d 845, 851 (Pa. 2001).'

*Commonwealth v. Freeman supra* 128 A.3d at 1244 *quoting Commonwealth v. Cannon*, 22 A.3d 210, 217-18 (2011).

In *Commonwealth v. Freeman*, the Superior Court held that the reference to the defendant as "the first guy" and/or "the second guy" was not in error provided the trial court directed the jury that the confession was to be used solely as evidence against the defendant that proffered the statement and not so considered against his co-defendant. *Id.* 128 A.3d at 1244. *See also Commonwealth v. Travers supra*; *Commonwealth v. McGlone*, 716 A.2d 1280, 1286 (Pa.Super. 1998); and Pa.SSJI(Crim) 3.12. These references to "the other person" or similar generic pronouns are clearly not improper as the same has been held to be permissible so long as the court instructs the jury to consider such testimony only in regard to the defendant who uttered the statement. *Commonwealth v. Freeman supra* 128 A.3d at 1244 *quoting Commonwealth v. Cannon supra*, 22 A.3d at 217–18.

Defendant Anderson and Co-Defendant White were both charged under their respective information based on their alleged involvement in the murder of Toby Gale, their supposed friend.

28

and subsequent disposal of the deceased's (Mr. Gale) body. Counsel with assistance from the court, crafted an understanding through which the statements of each defendant were redacted. Copies of each Defendants' redacted statements as agreed upon by counsel were made part of the record. *See* N.T. 5/15/12, pp. 180-81 and 188-89 – Commonwealth Exhibits C-31 through C-34; and N.T. 5/16/12, pp. 119-22, 126-29 – Commonwealth Exhibits C-41 through C-44.

Initial statements were provided to Chester City Police Detective James Nolan (now Delaware County Chief of the District Attorney's Criminal Investigation Division (CID)) on April 21, 2011. The following day (April 22, 2011) both defendants gave more detailed statements to Delaware County CID Homicide Detective Michael Jay. *Id.*

Recognizing the testimony substituting Defendant Anderson as "the other person" or "he" during the evidentiary presentation of the co-defendant's statement per Mr. White has been held by the appellate courts to be an acceptable redaction and this court relatedly charged the jury with the relevant, requisite instruction limiting its consideration of Co-Defendant White's statement only to the question of his guilt, these references were constitutionally proper. *Commonwealth v. Freeman supra* 128 A.3d at 1244 *quoting Commonwealth v. Cannon supra* 22 A.3d at 217-18; *Cf. Commonwealth v. Travers supra 564* Pa. at 369, 768 A.2d at 849. *See also* Pa. SSJI(Crim) 3.12.

The court while charging the jury provided, *inter alia*, the following instruction:

The Court:

> *... Regarding each [defendant] you may not consider any statement either Mr. Anderson and/or Mr. White allegedly made as evidence against that Defendant unless you find that the Defendant, in fact, made the statement. ...*

29

***

> *... [T]here's a rule of law that rightly restricts use by you of the evidence offered to show that a certain Defendant made a statement concerning the crimes charged.* A statement made before trial may be considered as evidence only against the Defendant who made the statement. Thus, you may consider as evidence the statements of Mr. - - the statements Mr. Anderson allegedly made to police detectives only against Mr. Anderson. ... **Equally, *you may consider as evidence the statements Mr. White supposedly made to police detectives only against Mr. White, again assuming you've concluded he in fact made those statements and such statements were voluntary. However, you must not consider Mr. White's statements as evidence against Mr. Anderson. You must not use the supposed statement of Mr. White made to police investigators in any way against Mr. Anderson.***

N.T. 5/17/12, pp. 86, 91-92. (Emphasis added). *See also* N.T. 5/17/12, pp. 86-93 (Jury instructions pertaining to determining voluntariness of the statements if, in fact, made in their entirety).

"Absent evidence to the contrary, the jury is presumed to have followed the trial court's instructions." *Commonwealth v. O'Hannon*, 557 Pa. 256, 262, 732 A.2d 1193, 1196 (1999) *citing Commonwealth v. LaCava*, 542 Pa. 160, 182, 666 A.2d 221, 231 (1995); *Commonwealth v. Brown*, 567 Pa. 272, 289, 786 A.2d 961, 971 (2001) *citing Commonwealth v. Travers supra citing Commonwealth v. Travaglia*, 541 Pa. 108, 661 A.2d 352 (1995); and *Commonwealth v. Spotz supra* 587 Pa. at 57, 896 A.2d t 1224 *quoting Commonwealth v. Brown supra* 567 Pa. at 289, 786 A.2d at 871 and *Commonwealth v. O'Hannon supra* 557 Pa. at 262, 732 A.2d at 1196. *See also Commonwealth v. Becher*, 293 A.3d 126, 1240 (Pa.Super 2023)("It is well settled that a jury is presumed to follow the trial court's instructions.") *quoting Commonwealth v. Cash*, 635 Pa. 451, 137 A.3d 1262, 1280 (Pa. 2016); *Commonwealth v. Patterson*, 180 A.2d 1217, 1228 (Pa.Super.

30

2018)("Absent evidence to the contrary, the jury is presumed to have followed the instructions of the court.") *quoting Commonwealth v. Spotz supra* 587 Pa. at 57, 896 A.2d t 1224 and *citing Commonwealth v. O'Hannon supra* 732 A.2d at 1196.

Here, the prosecutor did not commit a *Bruton* violation by identifying Defendant Anderson as being the "he" (other person) in Co-Defendant White's statement. *See* N.T. 5/17/12, pp. 35-36 Rather, he showed how Co-Defendant White's statement proved to be consistent with the forensic testimony and that of the medical examiner and immediately used it to argue that the Co-Defendant (White) was guilty of more than just voluntary manslaughter. *Id.*

Unfortunately for the Defendant, that same forensic and medical evidence showed that Defendant Anderson used a claw hammer on Toby Gale's head not once, but twice, and then while the deceased was still alive tied him up, placed him in a trash bag, and threw him into a field like a piece of garbage. Failing to call "911" and cleaning up the crime scene also contributed to the jury's rejection of Defendant Anderson's claim of mistaken self-defense.

Trial counsel's decision not to dwell on such evidence by lodging an objection was reasonable and no prejudice can be demonstrated by not raising a meritless objection. *See* N.T. 11/8 23, pp. 41-47, 55-6. *See also Commonwealth v. Fears supra* 86 A.3d at 804 *citing Commonwealth v. Washington supra* 927 A.2d at 603 (citations omitted)(" … [C]ounsel cannot be deemed ineffective for failing to raise a meritless claim[] or failing to perform a futile act."); *Commonwealth v. Busanet supra* 54 A.3d at 46; *Commonwealth v. Fulton supra* 830 A.2d at 572; and *Commonwealth v. Spotz supra* 896 A.2d at 1210 ("Counsel will not be deemed ineffective for failing to raise a meritless claim.")

31

## VI-C. Ineffective assistance of counsel for failing to object during the prosecutor's closing argument.

The Defendant also maintains that his trial lawyer was professionally incompetent for failing to object to the prosecution's closing argument where the assistant district attorney purportedly used inflammatory and prejudicial language. *See* Amended PCRA Petition docketed August 31, 2022, pp. 7-9. Trial counsel's failure to do so waived the issue for appellate purposes. In support of this collateral claim, PCRA counsel references the comment the prosecutor offered during his summation pertaining to the Defendant's statement to the police and how it was all lies, not worth the paper on which it was written, and should be used to line the cat (litter) box. *See* N.T. 5/17/12, pp. 30-32; Defendant's Amended PCRA Petition docketed August 31, 2022, pp. 7-9; and Defendant's Memorandum of Law filed January 2, 2024, pp. 18-21.

In his 1925(b) Statement Defendant Anderson posits:

> *[w]hether the PCRA Court erred in finding that Defendant's trial counsel was not ineffective under the Sixth Amendment to the United States Constitution and parallel provisions of the Pennsylvania Constitution, in failing to object to prejudicial and inflammatory remarks made by the prosecutor during closing argument, in which the prosecutor referred to Defendant's statement to police as lies, purported to cross examine Defendant's statement as if Defendant had actually testified and offered that Defendant's statement should be used to 'line the cat box", where counsel had no reasonable basis to forego an objection to the remarks, and the Defendant was prejudiced in that the remarks of the prosecutor were of such a nature as to form in the minds of the jurors a fixed bias against the Defendant?*

Defendant's Statement Pursuant to Pa.R.A.P. 1925(b) docketed August 15, 2024 – No. 3.

32

As the Defendant's trial counsel had an eminently reasonable basis for not objecting to the remarks, this ineffective assistance allegation is without merit. As well, the prejudice required for any relief cannot be demonstrated.

The Pennsylvania Superior Court has held that comments made during a closing argument " ... must be considered in the context of the entire summation." *Commonwealth v. Johnson,* 719 A.2d 778, 790 (Pa.Super. 1998), *appeal denied,* 559 Pa. 689, 739 A.2d 1056 (1999). *See also Commonwealth v. Santiago-Burgos,* 314 A.3d 535, 547 (Pa.Super. 2024); *Commonwealth v. Scott,* 212 A.3d 1094, 1110 (Pa.Super. 2019)(The court must review a challenged comment "not in isolation but in the context in which it was made."); *Commonwealth v. Ligons,* 565 Pa. 417, 430, 773 A.2d 1231, 1238 (2001); and *Commonwealth v. Brown,* 911 A.2d 576, 579 (Pa.Super. 2006) *citing Commonwealth v. Sampson,* 900 A.2d 887, 890 (Pa.Super. 2006) *quoting Commonwealth v. Correa,* 444 Pa.Super. 621, 624, 664 A.2d 607, 609 (1995). The Superior Court in *Commonwealth v. Raffensberger,* 291 Pa.Super. 193, 207, 435 A.2d 864, 870-71 (1981) found that the scope of this contextual review extends even further to include the contents of the entire case. (" ... [A]llegedly prejudicial remarks must be read in the context of the case as a whole, with a particular view to the evidence presented and reasonable inferences drawn therefrom, in order to determine whether they are indeed prejudicial." *Id.*). *See also Commonwealth v. Boone,* 286 Pa.Super. 384, 398-400, 428 A.2d 1382, 1389-90 (1981). *See generally Commonwealth v. Bullock,* 284 Pa.Super. 601, 426 A.2d 657 (1981). Review of prosecutorial remarks requires the court "to evaluate whether a defendant received a fair trial rather than a perfect one." *Commonwealth v. Rios,* 554 Pa. 419, 721 A.2d 1049, 1054 (1998)(*cited in Santiago-Burgos supra*) and *Commonwealth v. Woeber,* 174 A.3d 1096, 1107 (Pa.Super. 2017)(same).

33

During the course of closing summations, "[t]he prosecutor is free to argue that the evidence leads to the conclusion of guilt, and is permitted to suggest all favorable and reasonable inferences that arise from the evidence." *Commonwealth v. Chamberlain*, 612 Pa. 107, 153, 30 A.3d 381, 408 (2011) *citing Commonwealth v. Sam*, 535 Pa. 350, 362, 635 A.2d 603, 608 (1993). A new trial will not be considered necessary "[w]here the prosecutor's arguments are supported by the evidence and contain inferences which are reasonably derived therefrom." *Id. citing Commonwealth v. Bronshtein*, 547 Pa. 460, 485, 691 A.2d 907, 919 (1997). *See also Commonwealth v. LaCava supra* 542 Pa. at 181, 666 A.2d at 231 and *Commonwealth v. Hardcastle*, 519 Pa. 236, 254, 546 A.2d 1101, 1109 (1988).

Furthermore, "[t]he prosecutor may ... argue to the jury that the evidence establishes the guilt of the defendant and that certain facts in evidence are conclusive of such guilt." *Commonwealth v. Kaufman*, 307 Pa.Super. 63, 71, 452 A.2d 1039, 1043 (1982) *citing Commonwealth v. Oglesby*, 274 Pa.Super. 586, 595, 418 A.2d 561, 565 (1980). A prosecutor during the course of his closing summation, may as well " ... attempt to meet the arguments made by defense counsel in his summation." *Commonwealth v. Kelly*, 319 Pa.Super. 204, 211, 465 A.2d 1301, 1305 (1983) *citing Commonwealth v. Van Cliff*, 483 Pa. 576, 584, 397 A.2d 1173, 1177 (1979). *See also Commonwealth v. Robinson supra* 583 Pa. at 383, 877 A.2d at 448 *citing Commonwealth v. Trivigno*, 561 Pa. 232, 244, 750 A.2d 243, 249 (2000). *See also Commonwealth v. Hardcastle supra* 519 Pa. at 254, 546 A.2d at 1109 *quoting Commonwealth v. Barren*, 501 Pa. 493, 498, 462 A.2d 233, 235 (1983).

In a closing argument, " ... it is improper for a prosecutor to offer any personal opinion as to the guilt of the defendant or the credibility of the witnesses ... [;]" however, an assistant district

34

attorney may " ... summarize the evidence presented, to offer reasonable deductions and inferences from the evidence, and to argue that the evidence establishes the defendant's guilt." *Commonwealth v. Thomas*, 618 Pa. 70, 54 A.3d 332, 338 (2012) *citing Commonwealth v. Hutchinson*, 611 Pa. 280, 25 A.3d 277, 307 (2011) and *Commonwealth v. Chamberlain supra* 612 Pa. at 152, 30 A.3d at 408. The accepted goal of the prosecutor's closing summation is to " ... present the facts in a manner that will lead the jury to a dispassionate and objective evaluation of those facts and will produce a judgment warranted by the evidence." *Commonwealth v. Turner*, 390 Pa.Super. 216, 222, 568 A.2d 622, 625 (1989) *citing Commonwealth v. Davis*, 363 Pa.Super. 562, 583, 526 A.2d 1205, 1216 (1987), *allocatur denied*, 518 Pa. 624, 541 A.2d 1135 (1988).

A Commonwealth's attorney will not be found to have advocated impermissibly and hence committed "reversible error" during his closing " ... unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict." *Commonwealth v. Nicholson*, 308 Pa.Super. 370, 384, 454 A.2d 581, 588 (1982) *quoting Commonwealth v. McNeal*, 456 Pa. 394, 400, 319 A.2d 669, 673 (1974). *Commonwealth v. Epps*, 240 A.3d 640, 646 (Pa.Super. 2020). *See also Commonwealth v. Boone*, 287 Pa.Super. 1, 6, 428 A.2d 1382, 1389 (1981); *Commonwealth v. Ligons supra* 565 Pa. at 430, 773 A.2d at 1238 *citing Commonwealth v. Morales*, 549 Pa. 400, 423, 701 A.2d 516, 527-28 (1997); and *Commonwealth v. Turner supra* 390 Pa.Super. at 223, 568 A.2d at 625 (Referred to in *Turner* as the "unavoidable prejudice test"). " 'Whether a reversal of judgment is required depends on whether the remarks made by the prosecutor are of such a nature that they would seriously threaten the jury's objectivity and deprive the accused of a fair trial.' " *Commonwealth v. Gruff*, 822 A.2d 773, 782 (Pa.Super. 2003) *quoting Commonwealth v.*

35

*Carter*, 537 Pa. 233, 264, 643 A.2d 61, 76 (1994). The court in *Commonwealth v. Guilford* relatedly held that "[a] new trial is not mandated every time a prosecutor makes an intemperate or improper remark." *Commonwealth v. Guilford*, 861 A.2d 365, 371 (Pa.Super. 2004). *See also Commonwealth v. Ervin*, 766 A.2d 859, 864 (Pa.Super. 2000).

The decision as to the prejudicial quality of the statements by the prosecution offered in summation is for the trial judge. *Commonwealth v. Williams*, 289 Pa.Super. 388, 393, 433 A.2d 505, 508 (1981) *citing Commonwealth v. Stoltzfus*, 462 Pa. 43, 61, 337 A.2d 873, 882 (1975). Moreover, " ... the remedy to be applied in each case is within the discretion of the trial judge." *Id. See also Commonwealth v. Silvis*, 445 Pa. 235, 237, 284 A.2d 740, 741 (1971). Finally, like the defense, the prosecution is accorded reasonable latitude and may employ oratorical flair in arguing its version of the case to the jury. "The bounds of 'oratorical flair' afford the prosecution significant leeway in this regard. ... " *Commonwealth v. Anderson*, ____ A.3d ____ 2024 Pa.Super. 271, 2024 WL 4759146, *4 (filed 11/13/24). *See also Commonwealth v. Henry*, 550 Pa. 346, 706 A.2d 313, 330-31 (1997)(Reference to defense being "ridiculous" did not constitute misconduct or warrant relief); *Commonwealth v. Faulkner*, 528 Pa. 57, 595 A.2d 28 (1991)(Prosecutor calling the defense "stupid" and describing defense counsel's conduct as "outrageous" did not merit relief); *Commonwealth v. Brawner*, 553 A.2d 458 (Pa.Super. 1989), *appeal denied*, 522 Pa. 617, 563 A.2d 886 (1989)(Prosecutor's comments in his closing that the defense "smells to high heaven," is "rotten", and "stinks" not so egregious as to render the jury incapable of delivering a true verdict.); *Commonwealth v. Maxwell*, 505 Pa. 152, 477 A.2d 1309, 1316-17 (1984)(Prosecutor's rhetorical characterization of defense counsel as "blowing smoke" did not warrant relief.).

"An ineffectiveness claim based on counsel's failure to object to a prosecutor's closing argument has merit where it is demonstrated that the comment deprived the petitioner of a constitutional or statutory right, such as the right to a fair trial or due process." *Commonwealth v. Anderson supra citing Commonwealth v. Tedford*, 598 Pa. 639, 960 A.2d 1, 28-29 (2008). "The touchstone is the fairness of the trial, not the culpability of the prosecutor." *Id.* at 28. *See also Commonwealth v. Reid*, 688 Pa. 358, 415-16, 259 A.3d 395, 429 (2021).

When viewed by the applicable standards set forth immediately above, the Defendant's allegation of the assistant district attorney making improper and prejudicial argument during the Commonwealth's summation is readily seen to merit no relief.

The prosecutor during his closing argument was allowed to " ... argue that the evidence leads to the conclusion of guilt and is permitted to suggest all favorable and reasonable inferences that arise from the evidence." *Commonwealth v. Chamberlain supra* 612 Pa. at 153, 30 A.3d at 408 *citing Commonwealth v. Sam supra* 535 Pa. at 362, 635 A.2d at 608. On reviewing this collateral contention in the context of the trial as a whole, the assistant district attorney was within the bounds assigned of his prosecutorial duties to "argue the evidence," offer reasoned inferences based upon the evidence that had been presented at trial and attempt to meet in his closing the arguments made by defense counsel. *See Commonwealth v. Kelly supra* 319 Pa.Super. at 211, 465 A.2d at 1305 *citing Commonwealth v. Van Cliff supra* 483 Pa. at 584, 397 A.2d at 1177.

To reiterate, "a prosecutor is permitted to 'vigorously argue his case so long as his comments are supported by the evidence or constitute legitimate inferences arising from the evidence.' " *Commonwealth v. Luster*, 71 A.3d 1029, 1048 (Pa.Super. 2013)(*en banc*). "[C]omments by a

37

prosecutor do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds a fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict. *Commonwealth v. Hall*, 701 A.2d 190, 202 (Pa. 1997); *accord Commonwealth v. Reid*, 259 A.3d 395, 429, *citing Commonwealth v. Williams*, 896 A.2d 523, 542 (Pa. 2006).

Assuming the court would have sustained an objection, had it been raised, and if argued by trial counsel, the court could have granted the additional relief of a cautionary instruction or a mistrial. A cautionary instruction would not have created any reasonable probability of changing the jury's verdict and the prosecutor's comment clearly did not warrant the grant of a mistrial. Moreover, trial counsel gave a perfectly reasonable explanation that as a matter of tactics, he did not want to place undue emphasis on the prosecutor's overly dramatic oratory. *See* N.T. 11/18/12, pp. 44-47, 57-59. *See Commonwealth v. Anderson supra at \*3.* ("[W]e do not question whether there were other more logical courses of action which counsel could have pursued; rather we must examine whether counsel's decisions had any reasonable basis." *quoting Commonwealth v. Hanible*, 612 Pa. 183, 30 A.3d 426, 439 (2011)."). " 'A review of counsel's performance must be 'highly deferential.' " *Anderson supra at \*3 quoting Commonwealth v. Brown*, 649 Pa. 293, 196 A.3d 130, 150-51 (2018) *quoting Commonwealth v. Tharp*, 627 Pa. 673, 101 A.3d 736, 772 (2014).

The Defendant's contention fails on at least two (2) or all three (3) conjunctive prongs of the well-settled ineffectiveness standard needed for PCRA relief (*I.e.* arguable merit, reasonable basis, and required prejudice).

38

### VI-D. Ineffective assistance of counsel on direct appeal for failure to litigate trial court's alleged evidentiary ruling error.

At the trial, the prosecutor intended to call a family friend and caretaker of the Defendant's grandmother. Defendant Anderson lived with his grandmother at the time in question. The day before the Defendant admitted killing the victim (Toby Gale), the caretaker, Ms. Ratika Cruz, stopped by to check on Defendant Anderson's grandmother. While she was chatting with the Defendant, he was texting and audibly uttered "if this n***** come over here I'm going to f*** him up [*sic*]." N.T. 5/14/12, p. 204. The person the Defendant was referring to was never identified, but the certainly deceased fit the general description. Before Ms. Cruz's testimony, trial counsel raised his objection in the court's robing room. *See* N.T. 5/14/12 pp. 153-55. Defense counsel asserted that because the object of the Defendant's hostility was never identified that such a remark was speculative and unduly prejudicial. Because of the timing of the comment, the court deemed the testimony to be admissible and any inference to be assigned for the jury's determination, that is, a matter of weight rather than admissibility. Trial counsel's objection was therefore respectfully overruled. *Id.*

The fourth issue raised in Defendant's 1925(b) statement of matters pursued on appeal is expressed by asking:

> *[w]hether the PCRA Court erred in finding the Defendant's direct appeal counsel was not ineffective under the Sixth Amendment to the United States Constitution and parallel provisions of the Pennsylvania Constitution, in failing to raise on direct appeal trial court error in admitting the testimony of Ratika Cruz that, prior to the homicide, Defendant uttered a threat of violence directed at no specific person, where Cruz' testimony was inadmissible because it did not connect to the homicide, and, as evidence of a prior bad act was highly prejudicial and its admission not harmless as the*

39

*Pennsylvania Superior Court cited the testimony as tending to prove malice required for First Degree Murder?*

Defendant's Statement Pursuant to Pa.R.A.P. 1925(b) docketed August 15, 2024 – No. 4.

Defendant's PCRA counsel ably argued that this piece of evidence was referenced by the Superior Court as showing animus between the Defendant and his supposed friend, the deceased Mr. Gale, in upholding the Defendant's first degree murder guilty verdict. *See* Petitioner's Memorandum in Support of Post Conviction Relief, dated January 2, 2024, pp. 21-26; and Superior Court Memorandum Opinion *supra*. At the PCRA evidentiary hearing, the Defendant's counsel on direct appeal testified that it had been twelve (12) years, but he could only assume that he did not raise the issue because at that time he deemed the issue to be without merit. *See* N.T. 11/8/23, p. 13.

As it relates to this challenge on appeal, the Pennsylvania Supreme Court regarding the trial court's decisions to permit certain evidence has long recognized that below:

> ... [I]ssues concern[ing] the admissibility of evidence, which rests within the sound discretion of the trial court and therefore, [the appellate courts] 'will reverse [the] trial court's decision ... only if the appellant sustains the 'heavy burden' to show that the trial court has abused its discretion.' ... It is not sufficient to persuade the appellate court that it might have reached a different conclusion [;]it is necessary to show an actual abuse of discretionary power. An abuse of discretion will not be found based on a mere error of judgement, but rather exists where the court has reached a conclusion [that] overrides or misapplies to law, or where the judgement exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will.

*Commonwealth v. Christine,* 633 Pa. 389, 397, 125 A.3d 394, 398 (2015) *quoting Commonwealth v. Bryant,* 620 Pa. 218, 235, 67 A.3d 716, 726 (2013) *quoting Commonwealth v. Eichenger,* 591 Pa. 1, 31, 915 A.2d 1122, 1139-40 (2007). *See also Commonwealth v. Woodard,* 634 Pa. 162, 186, 129 A.3d 480, 494 (2015) *quoting Commonwealth v. Reid,* 627 Pa. 151, 189, 99 A.3d 470, 493 (2014); *Commonwealth v. Roberts,* 293 A.3d 1221, 1223 (Pa.Super. 2023).

The Pennsylvania Rules of Evidence provide, in material part, the following:

Rule 401. Test for Relevant Evidence.

Evidence is relevant if:

(a) it has any tendency to make a fact more or less probable than it would be without evidence; and

(b) the fact is of consequence in determining the action.

*Whether evidence has a tendency to make a given fact more or less probable is to be determined by the court in light of reason, experience, scientific principles and the other testimony offered in the case. ...*

Pa.R.E. 401(a)(b) and Comment (italicized).

Rule 403. Excluding Relevant Evidence for Prejudice, ... or Other Reasons. The court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Pa.R.E. 403.

Rule 404. ... Other Crimes, Wrongs or Acts.

(b) ... Other Crimes, Wrong or Acts.

(1) Prohibited Uses. Evidence of any other crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2) Permitted Uses. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only

41

> if the probative value of the evidence
> outweighs its potential for unfair prejudice.

Pa.R.E. 404(b)(1)(2).

"As the comment to Rule 403 instructs, " '[un]fair prejudice' means a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially.' " *Commonwealth v. Hairston*, 624 Pa. 143, 159, 84 A.3d 657, 666 (2014) *quoting* Pa.R.E. 403 (Comment).

"Because all relevant Commonwealth evidence is meant to prejudice a defendant, exclusion is limited to evidence so prejudicial that it would inflame the jury to make a decision based upon something other than the legal propositions relevant to the case." *Commonwealth v. Broaster*, 863 A.2d 588, 592 (Pa.Super. 2004). *See also Commonwealth v. Serge*, 837 A.2d 1255, 1260-61 (Pa.Super. 2003). "Not surprisingly, criminal defendants always wish to excise evidence of unpleasant and unpalatable circumstances surrounding a criminal offense from the Commonwealth's presentation at trial. Of course, the courts must make sure that evidence of such circumstances have some relevance to the case and are not offered solely to inflame the jury or arouse prejudice against the defendant. The [trial] court is not, however, required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand and form part of the history and natural development of the events and offenses for which the defendant is charged ... " *Commonwealth v. Lark*, 518 Pa. 290, 310, 543 A.2d 491, 501 (1988).

"At the heart of the ... prohibition on propensity evidence is the threat of prejudice to a defendant caused by replacing the presumption of innocence with a presumption of guilt based on

42

prior conduct." *Commonwealth v. Yale*, 249 A.3d 1001, 1014-15 (Pa. 2021) *citing Commonwealth v. Fortune*, 464 Pa. 367, 346 A.2d 783, 786 (1975). Relatedly, " ... exacting standards corral the Commonwealth's use of Rule 404(b) evidence to prevent unfair prejudice to a defendant whose liberty is at stake and to prevent the potential loss of the presumption of innocence." *Commonwealth v. Yale supra* 249 A.3d at 1015. *See also Commonwealth v. Herring*, 271 A.3d 911, 919 (Pa.Super. 2022) *citing* and *quoting Commonwealth v. Yale supra* 249 A.3d at 1015.

The sole purpose of the evidence was to demonstrate the Defendant's possible state of mind at the time of the infliction of the victim's abusive head trauma by way of Defendant Anderson striking the victim's head twice with a hammer. An inference regarding the Defendant's comment pertaining to what he was going to do could be accepted or rejected by the jury. Such an inference was in stark contrast to witnesses who testified to the friendship between Defendant Anderson and the deceased. *See for e.g.*, N.T. 5/14/12, pp. 115 (Tony, Donier, and Brian were still friends in April 2012) and N.T. 5/14/12, pp. 166-67 (The guys would hang out together.). A review of the material trial record demonstrates that the admission of the subject testimony at issue was not manifestly unreasonable and/or the court's decision grounded in partiality, prejudice, bias, and/or ill will. Indeed, in reviewing the sufficiency of the evidence presented to sustain the Defendant's first degree murder conviction on direct appeal, the Superior Court recognized that such evidence allowed for the permissible inference "that [the deceased] Gale was the object of [Defendant] Anderson's ire given that Anderson admits that he killed Gale that evening." Superior Court Memorandum Opinion *supra* at *3. *See also* Pa.R.A.P. 1925(a) Trial Court Opinion *supra* at 21; and N.T. 5/14/12, p. 204.

Assuming *arguendo,* that the court was mistaken in admitting the evidence, such error was harmless because on the trial record it could not have contributed to the verdict. The doctrine of

43

harmless error is a technique of appellate review designed to advance judicial economy by obviating the necessity for a retrial where the appellate court is convinced that a trial error was harmless beyond a reasonable doubt. Its purpose is premised on the well-settled proposition "that a defendant is entitled to a fair trial but not a perfect one." *Commonwealth v. Thornton*, 491 Pa. 260, 266, 431 A.2d 248, 251 (1981); and *Commonwealth v. Yockey*, 158 A.3d 1246, 1254 (Pa.Super. 2017), *appeal denied*, 643 Pa. 686, 174 A.3d 567 (2017) *citing Commonwealth v. Chmiel*, 585 Pa. 547, 581-82, 889 A.2d 501, 521 (2005). An error is harmless if, *inter alia, the* record demonstrates "the error did not prejudice the defendant or the prejudice was *de minimis." Commonwealth v. Hairston*, 84 A.3d 657, 671-72 (Pa. 2014).

Here, any prejudicial effect of the putative error is so insignificant that it is clear beyond a reasonable doubt the claimed mistake could not have contributed to the verdict. *Commonwealth v Story*, 476 Pa. 391, 412, 383 A.2d 155, 165 (1978). The prejudice, if any, caused by the one cryptic comment made by the Defendant is *de minimis* compared to the expert medical and forensic evidence introduced by the Commonwealth to establish Defendant Anderson's guilt. *See* pp. 11-13 *supra quoting* Super Court Memorandum Opinion dated November 26, 2013 at *1 and *3. ("[O]ur review of the record reveals a **plethora of** evidence to support a finding that Anderson killed Gale with malice, and not out of an actual fear for his life.")

Although the defense objection may be of arguable merit, nonetheless, the court's ruling was not an abuse of discretion and, therefore, the Defendant did not suffer any prejudice as a result of appellate counsel not pursuing the issue on appeal. The forensics and expert medical testimony presented by the Commonwealth completely refuted the Defendant's version of what occurred. Apart from the compelling and uncontradicted medical evidence introduced, the jurors' plain

44

commonsense was sufficient cause to reject the Defendant's supposed self-defense explanation. This error assignment is meritless, but if this court's ruling were to be deemed an abuse of discretion, it was on the trial record's totality harmless error. *See Commonwealth v. Thornton supra* 491 Pa. at 266, 431 A.2d at 251; *Commonwealth v. Yockey supra* 158 A.3d at 1254 *citing Commonwealth v. Chmiel supra* 585 Pa. at 581-82, 889 A.2d at 521; *Commonwealth v. Hairston supra* 84 A.3d at 671-72; *Commonwealth v. Kurtz*, 294 A.3d 509, 531, n. 15 (Pa.Super. 2023) *quoting Commonwealth v. Holt supra* 273 A.3d at 540.

In summary, appellate counsel was not ineffective for failing to raise on direct appeal the subject evidentiary claim. For claims of appellate counsel ineffectiveness, a defendant must established each of the underlying elements of the *Strickland* test. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2952, 80 L.Ed.2d 674 (1984); *Commonwealth v. Tedford*, 950 A.2d 1, 16 (Pa. 2008). Accordingly, a defendant yet must prove: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome would have been different. *Commonwealth v. D'A'mato,* 856 A.2d 806, 812 (Pa. 2004); *Commonwealth v. Sandusky supra* 203 A.3d at 1043. As an appellate issue, a defense claim that the court's ruling was an abuse of discretion is meritless; and moreover, the required prejudice under the PCRA cannot be demonstrated.

45

## VII. Conclusion

Of the four (4) issues of alleged ineffective assistance of collateral counsel raised and litigated by the Defendant, none of the actions or omissions alleged by the trial lawyer or attorney on direct appeal (either individually and/or cumulatively) caused prejudice to Defendant Anderson such that the truth determining process was undermined. While some of Defendant's individual claims either lack merit and/or trial counsel had a reasonable basis for his actions, Defendant Anderson's claims all fall under the third prong of the PCRA standard as the Defendant has clearly failed to demonstrate the requisite prejudice to warrant the grant of PCRA relief. The evidence of Defendant Anderson's guilt was so overwhelming such that there is no probability the outcome of the trial could have been different if he had succeeded on any or all of the issues now raised.

For all these reasons, the court's dismissal of the Defendant's counseled, amended PCRA petition following such an evidentiary hearing should be affirmed.

BY THE COURT:

Kevin F. Kelly, J.

46

[1] 42 Pa.C.S. §§9541 *et. seq.*
[2] 18 Pa.C.S. §2502(a).
[3] 18 Pa.C.S. §2502(c).
[4] 18 Pa.C.S. §907.
[5] 18 Pa.C.S. §5510.
[6] 18 Pa.C.S. §4910.
[7] 18 Pa.C.S. §2502(a).
[8] 18 Pa.C.S. §2502(c).
[9] 18 Pa.C.S. §907.
[10] 18 Pa.C.S. §5510.
[11] 18 Pa.C.S. §4910.
[12] 18 Pa.C.S. §2502(a).
[13] 18 Pa.C.S. §907.
[14] 18 Pa.C.S. §5510
[15] 18 Pa.C.S. §4910.
[16] 18 Pa.C.S. §2502(c).
[17] 18 Pa.C.S. §2503(b).
[18] 18 Pa.C.S. §2502(a).
[19] 18 Pa.C.S. §907.
[20] 18 Pa.C.S. §4910.
[21] 18 Pa.C.S. §5510.
[22] 18 Pa.C.S. §907.
[23] 18 Pa.C.S. §4910.
[24] 18 Pa.C.S. §2502(a).
[25] 18 Pa.C.S. §5510.
[26] 18 Pa.C.S. §2502(a).
[27] 18 Pa.C.S. §2503(b).
[28] 18 Pa.C.S. §2502(a).
[29] 18 Pa.C.S. §2502(a).

[30] When "the trial court orders an Appellant to file a concise statement of matters complained of on appeal under Pa.R.A.P. 1925, any issue not contained in that statement is waived on appeal." *Commonwealth v. Rolen*, 964 A.2d 398, 409 (Pa.Super. 2008). "Any issues not raised in a [Rule] 1925(b) Statement will be deemed waived." *Commonwealth v. Castillo*, 888 A.2d 775, 780 (Pa. 2005)(*quoting Commonwealth v. Lord*, 719 A.2d 306, 309 (Pa. 1998)). *See also* Pa.R.A.P. 1925(b)(4)(vii)("Issues not included in the statement and/or not raise in accordance with the provisions of this paragraph (b)(4) are waived." Accordingly, Defendant Anderson's PCRA claim with respect to the trial court's ruling that he and his co-defendant's (Donier White's) case could be joined for trial is on appeal unreviewable.